**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| MARRKEITH BUSTER | : CIVIL ACTION NO. |
| Plaintiff, | : |
| v. | : **JURY TRIAL DEMANDED** |
| GOLD MEDAL BAKERY, INC. | : |
| Defendant. | : JUNE 15, 2021 |

## COMPLAINT

### JURISDICTION AND VENUE

1. This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2; the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. 46a-60, *et seq.*; and Connecticut state law.

2. The jurisdiction of this court is founded upon 28 U.S.C. §1331 (federal question) and the provisions of 28 U.S.C. §1343.

3. Venue is proper in the District of Connecticut pursuant to 28 U.S.C. §1391(b) in that the claims arose in this district and Plaintiff resides in this district.

4. Supplemental jurisdiction over Plaintiff's supplemental state law claims is invoked pursuant to 28 U.S.C. §1367 as the claims arise out of the same transaction and occurrences as Plaintiff's federal claims.

5. Costs, expert witness fees, and attorney's fees are sought pursuant to 42 U.S.C. §1988.

### EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. The Plaintiff received a Notice of Right to Sue on March 18, 2021.

7. The Plaintiff received a Release of Jurisdiction on March 17, 2021.

**PLAINTIFF**

8. The Plaintiff, Marrkeith Buster ("Plaintiff" or "Buster"), resides at150 Fairfax Street, West Haven, CT 06516.

**DEFENDANT**

9. The Defendant, Gold Medal Bakery Inc. ("Defendant" or "Gold Medal") is a corporation organized under the laws of the state of Massachusetts, headquartered in Massachusetts and conducts substantial business in the state of Connecticut, operating a corporate office at 155 Hill Street, Milford Connecticut, 06460, where Plaintiff was employed.

10. The Defendant employs more than twenty (20) employees.

**FACTUAL ALLEGATIONS**

11. Plaintiff is African-American.

12. Plaintiff was born on November 28, 1974, and is 46 years of age.

13. Plaintiff had been a dedicated tractor-trailer driver for Gold Medal for over fifteen (15) years until his wrongful termination from the company on January 3, 2020.

14. Mr. Buster was hired by Gold Medal as a Class A Driver.

15. Throughout his employment, Mr. Buster always performed the duties of his position in a satisfactory manner.

16. At all times relevant, Buster's supervisors were predominantly white and Caucasian.

17. When Buster was first hired his supervisor was Joe Rescinderas ("Rescinderas") (white, Caucasian).

18. Rescinderasa was replaced by Jeff Smith ("Smith") (white, Caucasian) in 2011.

19. Subsequently thereafter, Smith was replaced by Al Batista ("Batista") (white, Caucasian) around mid-year in 2017.

20. Finally, Vincent Demartino ("Demartino") (white, Caucasian) became Buster's Direct Supervisor until the day of his wrongful termination from Gold Medal.

21. Plaintiff was treated disparately throughout his tenure, which increased and intensified, culminating in his termination.

**A. Disparate treatment manifests itself in the terms and conditions of employment. In this case, Buster was treated disparately with respect to the application of certain rules and policies in order to terminate his employment under the guise of a "Safety Violation for Preventable Accident."**

22. While Buster was reprimanded, disciplined, and ultimately terminated for allegedly being involved in a small driving incident, Caucasian employees were not treated similarly.

23. Likewise, Buster's Caucasian Supervisor continually ordered Buster to submit to urinalysis tests but would not require his similarly situated Caucasian peers to follow the same instruction.

24. In fact, Buster had been requested to provide a urine sample approximately 3-4 times per month—much more than his white co-workers.

**B. Due to the Disparate Treatment Mr. Buster Contacted Human Resources.**

25. Plaintiff contacted Human Resources ("HR") to complain regarding the constant urine tests his supervisor required him to submit, and how it was creating a hostile and discriminatory work environment to him.

26. In or about October 2019, Buster was tasked to drive to Fall River, Massachusetts, where Jonathan Santos ("Santos") (white, Caucasian) was the supervisor in charge.

27. While being there, Santos pointedly inquired to Buster, "**we haven't fired you yet?**" a brazen remark, suggestive of Defendant's intentions to ultimately terminate his employment.

28. To that end, Buster became a target for termination within months.

29. In September/October of 2019, as Buster was driving into one of the Whole Foods Market ("Whole Foods") locations, his landing gear got stuck because of the way in which he entered Whole Foods' driveway. Importantly, Buster was specifically told to drive into that driveway in the manner that he did. No other vehicles were involved, no pedestrians were involved, and Buster was not issued an infraction for this incident.

30. Yet, despite Buster's valid explanation of what had actually occurred, he was still reprimanded as further evidence that he was being targeted and unfairly written up because he had previously complained about being treated disparately with respect to the urinalysis tests being required of him and not the Caucasian drivers.

31. Then, in or about October 2019, Buster was written up once again this time for purportedly for not performing correctly, which was his second write-up over the same Whole Foods incident, which demonstrates that Defendant was trying to speed up his termination.

32. A few months prior, Defendant attempted to write Buster up for delivering to the wrong location. Buster had to prove that it was not his fault and felt targeted as if Defendant was using any excuse to terminate his employment.

33. Other similarly situated Caucasian employees have delivered to the wrong location and were not written up.

34. On January 3, 2020, Defendant's plan to terminate Buster came to fruition when it exaggerated a very minor driving accident that occurred on December 20, 2019.

35. That day, December 20, 2019, Buster's vehicle slightly contacted a snowbank while he was backing up his truck, causing very minor damage.

36. Significantly, again, Buster was not issued a ticket, stopped before the crosswalk, did not go through a red light, or impact another vehicle — he simply hit a snowbank.

37. Other white co-workers have also caused damages to their vehicles while driving in the winter months and those drivers, in comparison to Buster, were not written up and terminated when they caused damage to their vehicle.

38. Buster was aggressively written up by Defendant and ultimately terminated for inconsequential alleged mistakes, which similarly situated white drivers were not terminated for comparable mistakes.

39. Plaintiff felt as though he was being overly critiqued in an effort to manufacture an excuse to terminate him.

40. Caucasian employees who made serious mistakes were not terminated from their position, and are still employed with the company.

41. For example, Joe (white, Caucasian) had approximately five accidents within a few months and was not terminated. Joe's accidents also involved other vehicles and Buster's incidents did not.

42. Another white driver was involved in a serious motor vehicle accident that resulted in multiple fatalities and he was not terminated.

43. It is clear that this last issue with Buster contacting a snowbank had been blown out of proportion in order to contrive a reason to terminate Buster, an African-American employee, with over fifteen year's tenure.

44. A lesser former means of discipline could have been issued if it were necessary, as has been the case of other employees who have truly committed serious faults and were given the benefit of not being disciplined as harshly as Mr. Buster.

## COUNT ONE

### VIOLATION OF TITLE VII
### (RACE AND COLOR DISCRIMINATION)

45. The Plaintiff hereby re-alleges and reincorporates paragraphs 1-44 with the same force and impact as if fully set forth herein.

46. Plaintiff is African-American.

47. The Plaintiff was qualified for his position. Defendant outwardly treated Plaintiff disparately because of the characteristics associated with his African-American race and color.

48. Plaintiff was supervised by Caucasian employees.

49. Throughout his employment at Gold Medal, Plaintiff was subjected to disparate treatment due to his African-American race and black color, including, but not limited to:

    a) Defendant asking Buster, "we haven't fired you yet?";

    b) Being overly critiqued;

    c) Being subjected to constant urinalysis tests requests that his Caucasian counterparts were not required, and

    d) Disparate application of rules and policies that, in Buster's case, were used as the manufactured excuse to wrongfully terminate his employment.

50. The Defendant subjected Buster to an adverse employment action when it (i) changed the conditions of his employment by requiring him to take a disproportionate amount of

urinalysis tests than his Caucasian co-workers; and (ii) by terminating his employment on January 3, 2020.

51. While Buster was reprimanded, disciplined, and ultimately terminated for allegedly being involved in a small driving incident, similarly situated Caucasian employees were not treated similarly as it was the case with Joe (white, Caucasian) who had approximately five accidents within a few months and was not terminated. Joe's accidents also involved other vehicles. Rather, Buster's incidents did not.

52. Another white driver was involved in a serious motor vehicle accident that resulted in multiple fatalities and he was not terminated.

53. Defendant's actions were taken against Buster due to his African-American race and black color, are a violation of Title VII.

54. As a result of the foregoing conduct, Plaintiff has suffered and will continue to suffer damages including but not limited to lost wages, fringe benefits, health insurance, emotional and psychological distress, stress, anxiety, and loss of the ability to enjoy life's pleasures and activities.

55. Plaintiff is seeking damages as a result of Defendant's unlawful conduct.

## COUNT TWO

### VIOLATION OF CONN. GEN. STAT. § 46A-60(b)(1)
### (RACE AND COLOR DISCRIMINATION)

56. The Plaintiff hereby re-alleges and reincorporates paragraphs 1-55 with the same force and impact as if fully set forth herein.

57. Defendant's actions and conduct are a violation of Conn. Gen. Stat. § 46a-60(b)(1).

58. As a result of the foregoing conduct, Plaintiff has suffered and will continue to suffer damages including but not limited to lost wages, fringe benefits, health insurance, emotional and psychological distress, stress, anxiety and loss of the ability to enjoy life's pleasures and activities.

59. Plaintiff is seeking damages as a result of Defendant's unlawful conduct.

## COUNT THREE

### RETALIATION,
### IN VIOLATION OF TITLE VII

60. The Plaintiff hereby re-alleges and reincorporates paragraphs 1-44 with the same force and impact as is fully set forth herein.

61. Plaintiff, recognizing that he was not being treated fairly, contacted Human Resources to complain regarding the constant urinalysis tests his supervisor constantly required him to undergo, and how it was not required in nearly the same frequency to his Caucasian peers.

62. Instead of remedying the situation, motivated by retaliation, Plaintiff was subjected to further disparate treatment and thereafter terminated from his employment on January 3, 2020.

63. Defendant retaliated against Buster for complaining about disparate treatment he had been subjected to.

64. Defendant's conduct is unlawful and in violation of Title VII.

65. As a result of Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer damages, including but not limited, to substantial lost wages, fringe benefits, health insurance, retirement and pension benefits, mental and emotional distress, and the ability to enjoy life's pleasures.

66. Plaintiff seeks damages as a result of Defendant's unlawful conduct.

## COUNT FOUR

### VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT

67. The Plaintiff hereby re-alleges and reincorporates paragraphs 1-44 with the same force and impact as is fully set forth herein.

68. The Plaintiff was 46 years old at the time of the events and interactions alleged in his Complaint.

69. The Plaintiff was at all times qualified for the position he held.

70. The Plaintiff was treated disparately because of his age, and subjected to numerous adverse employment actions, including (i) changing the conditions of his employment by requiring him to submit to disproportionate urinalysis tests in comparison to Caucasian employees; and (ii) terminating his employment on January 3, 2020.

71. Defendant's actions and conduct are a violation of the ADEA.

72. As a result of the foregoing conduct, Plaintiff has suffered and will continue to suffer damages including but not limited to lost wages, fringe benefits, health insurance, emotional and psychological distress, stress, anxiety, and loss of the ability to enjoy life's pleasures and activities.

73. Plaintiff is seeking damages as a result of Defendant's unlawful conduct.

## COUNT FIVE

### VIOLATION OF CONN. GEN. STAT. § 46A-60(b)(1)
### (AGE DISCRIMINATION)

74. The Plaintiff hereby re-alleges and reincorporates paragraphs 1-44 and 67-73 with the same force and impact as is fully set forth herein.

75. The Plaintiff was treated disparately because of his age and was wrongfully terminated on January 3, 2020, constituting an adverse employment action.

76. Defendant's actions and conduct are a violation of Conn. Gen. Stat. § 46a-60(b)(1).

77. As a result of the foregoing conduct, Plaintiff has suffered and will continue to suffer damages including but not limited to lost wages, fringe benefits, health insurance, emotional and psychological distress, stress, anxiety, and loss of the ability to enjoy life's pleasures and activities.

78. Plaintiff is seeking damages as a result of Defendant's unlawful conduct.

## COUNT SIX

### RETALIATION,
### IN VIOLATION OF THE CONN. GEN. STAT 46A60(B)(4)
### (AGE, RACE, AND COLOR)

79. The Plaintiff hereby re-alleges and reincorporates paragraphs 1-78 with the same force and impact as is fully set forth herein.

80. Plaintiff, recognizing that he was not being treated fairly, contacted Human Resources to complain regarding the constant urinalysis tests his supervisor constantly required him to submit to, and that Defendant did not require the test with the same frequency as his Caucasian peers.

81. Instead of remedying the situation, motivated by retaliation, Plaintiff was subjected to further disparate treatment and terminated from his employment on January 3, 2020.

82. Defendant retaliation was motivated by Buster complaining about disparate treatment.

83. Defendant's conduct is unlawful and in violation of the C.G.S. 46a60(b)(4).

84. As a result of the Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer damages, including but not limited, to substantial lost wages, fringe benefits, health insurance, retirement and pension benefits, mental and emotional distress, and the ability to enjoy life's pleasures.

85. Plaintiff seeks damages as a result of Defendant's unlawful conduct.

**PRAYER FOR RELIEF**

Wherefore the Plaintiff prays that this court award:

1. Money damages;
2. Costs;
3. Punitive damages, attorney fees, and expert witness fees;
4. Pre-judgment interest
5. Trial by jury; and
6. Such other relief as the Court deems just, fair, and equitable.

THE PLAINTIFF,
MARRKEITH BUSTER


By: _____/s/_____
    Michael C. McMinn (*ct27169*)
    **THE MCMINN EMPLOYMENT**
    **LAW FIRM, LLC**
    1000 Lafayette Blvd., Suite 1100
    Bridgeport, CT 06604
    Tel: (203) 683-6007
    Fax: (203) 680-9881
    Email: michael@mcminnemploymentlaw.com

*COUNSEL FOR PLAINTIFF*